## HENRY v. PHŒNIX OIL CO.
### Civil Action No. 378.
District Court, W. D. Pennsylvania.
Dec. 6, 1943.

Kountz & Fry, of Pittsburgh, Pa., for receiver.

Robbin B. Wolf, of Pittsburgh, Pa., for defendant.

John A. Emery, Stephen Emery, and H. F. Stambaugh, all of Pittsburgh, Pa., for creditors.

William I. King, of Pittsburgh, Pa., for Robbin B. Wolf.

GIBSON, District Judge.

The far from pleasant duty of the court in the above entitled matter is to pass upon exceptions to the report of the Special Master by which he recommended the denial of an attorney's fee to Robbin B. Wolf, Esquire.

The court had some knowledge of this receivership in its earlier stages and knows that the perilous situation of the Phoenix Oil Company in those stages, as portrayed by the Special Master, was quite correct. Its principal asset consisted of leases and permits covering oil lands in Wyoming. One well had been drilled but was not in operation. A $10,000 mortgage, past due and foreclosure threatened, was upon the property. Some of the leases were about to

expire and others were subject to expiration. The oil well, to preserve the leases, had to be reconditioned in the very near future. And with this situation confronting it, the Oil Company had no funds, and none of its stockholders were willing to provide any for the purpose of saving anything from the wreck.

In this situation the instant bill in equity was filed the answer being prepared by Robbin B. Wolf, Esq., as attorney for the defendant. An immediate sale was the hope, but, after several disappointments, did not materialize. Prior to the institution of this action, the stockholders refused to put up any money for possible salvage purposes. The receiver also declined to advance any funds for the purpose. The present exceptant, executor of the estate of E. S. Fownes, deceased, in a preliminary account in the Orphans' Court inventoried claims of the estate against the Phoenix Oil Company as of no value.

 In the situation as it existed immediately before, and immediately after the appointment of the receiver and even later, and in view of the complete lack of funds in the Company or its receiver, it seemed practically certain that not only the stockholders and creditors of the Phoenix Oil Company, but also the receiver and its counsel, would receive nothing for administrative expenses upon liquidation of the Company. With the contingency of salvage thus remote, nobody, except Mr. Wolf was willing to, or did, expend any money to attempt to make the contingency a certainty. Mr. Wolf did, in toto, advance about $500 for the preservation of equities of the Oil Company which ultimately led to the fund for distribution. The testimony before the Special Master plainly establishes his services and expenditures in the time of dire need, and the court feels that the learned Special Master was in error in finding that Mr. Wolf brought no fund into court for distribution. His expenditures and special knowledge, and advice to the receiver and his counsel, were very largely instrumental in producing the present fund.

True, Mr. Wolf had never been duly appointed either as counsel or special counsel for the receiver, although frequently consulted and rendering service to it. He did, however, act as the defendant's counsel and as attorney for himself as a creditor of the defendant. Under the stringent bankruptcy rule an attorney for the bankrupt or an attorney for a creditor who has rendered services of value to the estate in bankruptcy is entitled to compensation. The same rule applies in the instant matter and therefore the exception of Mr. Wolf to the Master's finding and recommendation will be sustained.

 Having reached that conclusion, the court is face to face with the vexed question as to the amount to be awarded. As stated, the services of Mr. Wolf benefited the estate, both in the way of advice based upon special knowledge relative to matters affecting the debtor and by his expenditure of moneys in an endeavor to obtain a fund for distribution at a time when the future existence of such a fund was very doubtful. On the other hand, his legal services were in part voluntary, and were rendered without any appointment from the court. Also such services were, in part, duplicated by those of Kountz & Fry, attorneys for the receiver. And, further, the total fund for distribution is not large, and approximately four-sevenths of it has been already awarded to pay administrative expenses. Under circumstances other than these the court feels that the award might be greater, but under existing facts is of opinion that the sum of $1,500 may be allowed Mr. Wolf in his dual capacity as attorney for the debtor and for a creditor. Were a larger award to be made, the court, in giving due consideration to the Special Master's findings and recommendations, would be required to reduce the amount awarded to Kountz & Fry as attorneys for the receiver. Supported as was that award by the finding of the Master and the testimony offered to sustain it, we feel such action would be improper.

Counsel for the exceptant originally filed no exception to the Master's award to Kountz & Fry, but on hearing did file such exception, based on the claim that the sum of $3,000 was sufficient compensation for the combined services of Kountz and Fry and Mr. Wolf. In taking this position the court feels that counsel had undervalued the services of Mr. Wolf in respect to the fund for distribution. The possibility of any fund when he spent his money was far from certain, and (other elements not being ignored) one who ventures his money with long odds against him is entitled to a greater return in event of success than is he who ventures his with strong odds in his favor.

The exception to the award to Kountz & Fry will be dismissed.